IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ORLANDO ORTIZ-PRATTS<br>Plaintiff<br>vs<br>EVERTEC GROUP LLC PUERTO RICO; EVERTEC, INC.<br>Defendants | CIVIL 14-1814CCC |

**AMENDED OPINION AND ORDER**

On November 14, 2014, Orlando Ortiz-Pratts ("plaintiff" or "Ortiz-Pratts") filed a Complaint (d.e. 1) against his former employer Evertec Group LLC Puerto Rico and Evertec, Inc. ("defendant" or "Evertec"), pursuant to the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C., sec. 12117(a), and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e et seq. It also requests that the Court exercise supplemental jurisdiction over state claims under Puerto Rico's Law No. 45 of April 18, 1935 ("Law 45"), PR Laws Ann. T. 11 sec. 7 et seq.; Law No. 44 of June 2, 1985 ("Law 44"), as amended; Law No. 80 of May 30, 1976 ("Law 80"), as amended; and Law No. 115 of December 20, 1991 ("Law 115"). Ortiz-Pratts alleges that he was harassed, discriminated, retaliated, and eventually terminated, due to his disability, requests for a reasonable accommodation, and for his discrimination complaints and opposition against defendant's unlawful employment practices. (d.e. 1, ¶ 3).

Before the Court are defendant's Motion for Summary Judgment (**d.e. 26**) and Statement of Uncontested Material Facts (d.e. 25), the Opposition (d.e. 32), Reply (d.e. 35), and Sur Reply (d.e. 44). Plaintiff requests in his opposition to voluntarily dismiss "his causes of action for disability

CIVIL 14-1814CCC                    2

discrimination as well as for failure to accommodate under the American with Disabilities Act and under Law No. 44 of June 2, 1985, as amended." (d.e. 32, p. 1). Said request for voluntary dismissal of his disability discrimination and failure to provide reasonable accommodations claims under ADA and Law 44 is hereby GRANTED. Consideration of the summary judgment motion is, therefore, limited to the only remaining claims, that is, the hostile work environment claims and retaliation claims and Puerto Rico Law 115 and Law 80 claims.

I.   **FACTUAL BACKGROUND**

Plaintiff Ortiz-Pratts occupied the position of Electronic Service Specialist at Evertec from October 14, 2004 until April 28, 2008. (d.e. 25, ¶ 17). At some point in 2012, plaintiff assumed the position of Network Analyst.[1] As a Network Analyst, one of his duties was to attend to tasks[2] and incidents[3] and close tickets in a specific period of time. (d.e. 25, ¶¶ 18, 20, 22-23). He would also lend support to the server infrastructure of the Windows Operating System. (d.e. 25, ¶ 24). During the first months of 2013, plaintiff received on the job, practical training from Luis Padilla. (d.e. 25, ¶ 21). On the days that he was not receiving training, plaintiff was closing tickets and incidents as part of his duties. (d.e. 25, ¶ 22). His direct and indirect supervisors were Jorge Carrillo ("Carrillo") and Osvaldo Morales ("Morales"), respectively. (d.e. 25, ¶ 25).

---

[1] It is unclear from the record on what day plaintiff assumed the position of Network Analyst.

[2] Tasks are requests made by Evertec's internal or external clients.

[3] Among other things, incidents are problems that have already been worked on and that need maintenance.

CIVIL 14-1814CCC                              3

Plaintiff has astigmatism and myopia with symmetric cornea and cannot see without use of prescription eyeglasses. (d.e. 25, ¶¶ 5, 8). On or around March of 2013, plaintiff was notified that he would be moved from his desk at Building B to the Network Operations Center ("NOC"). (d.e. 25, ¶ 27). On May 8, 2013, plaintiff emailed Solimar Ortiz, in Evertec's Human Resources Division, asking to meet to discuss a request for reasonable accommodation. (d.e. 25, Exhibit D). She provided him with the necessary documents to request such accommodation. (d.e. 25, ¶35). Plaintiff submitted a Medical Certification Form on May 10, 2013 completed by his optometrist, Dr. Carelis Román, who certified (1) that because of his acute astigmatism, plaintiff "must work in an environment with good lighting to avoid him experiencing visual fatigue during the day," and (2) that with eyeglasses, plaintiff had no restrictions. (d.e. 25, Exhibit I). On May 30, 2013, Evertec denied plaintiff's request for reasonable accommodation, stating:

> After finalizing the interactive process related to the request for reasonable accommodation filed by you on May 13, 2013, by providing a medical certificate dated May 16, 2013, I hereby confirm that we inspected your work area located in the NOC and it complies with the medical recommendation stated in the request.
>
> The recommendation provided by your doctor states that it must be in an area with good lighting and your desk has a bulb which lights the same directly and receives additional lighting from the desks on the back of your desk. To that effect we spoke with Dr. Carelis Roman on May 14, 2013 as part of the process and in order to confirm that your work area complies with the medical recommendation.

(d.e. 25, Exhibit I).

On May 15, 2013, plaintiff commenced a non-occupational medical leave. (d.e. 25, Exhibit K). On May 29, 2013, he informed the Human Resources department that his condition was related to work. (d.e. 25, ¶ 31, Exhibit F). Evertec provided plaintiff with the employer report for the State Insurance Fund

CIVIL 14-1814CCC                              4

("SIF") so that he could be evaluated and receive services. (d.e. 25, ¶ 31, Exhibit F). Plaintiff was evaluated by the SIF on May 31, 2013 and placed on rest until June 13, 2013. (d.e. 25, ¶ 32, Exhibit G). On December 18, 2014, the SIF notified Evertec that plaintiff failed to appear at his appointment for medical treatment on June 17, 2014 and that as a result they were "unable to evaluate the case or establish a final diagnoses and causal relationship." (d.e. 25, ¶ 33, Exhibit H).

Plaintiff's deposition testimony referred to Morales having made a series of derogatory comments against him. (d.e. 28-1). Plaintiff also alleged that on a daily basis, Morales would be on top of him, questioning him. (d.e. 25, ¶ 52).[4]

On July 8, 2013, plaintiff received a written warning from Carrillo stating that during the period of January 1, 2013 to May 1, 2013 he had completed only 80.89% in the closing of incidents, below the 98% objective. (d.e. 25, Exhibit K). On October 7, 2013, a "Final Warning" was issued stating that plaintiff was still not meeting his performance objectives.[5] (d.e. 25, Exhibit L) The warning also reprimanded plaintiff for leaving work without authorization on 25 occasions and for a September 24, 2013 incident when plaintiff allegedly failed to properly direct an alarm call to the correct area in order for the incident to be resolved. (d.e. 25, Exhibit L). The warning provided:

---

[4] In his deposition, plaintiff states that Morales was "hiding in the hallway." When asked to explain, plaintiff replied "[y]ou're at your desk and all of a sudden, you're calmly doing your work and when you least expect it, there is someone who is not your direct supervisor on top of you, questioning you." (d.e. 25, Exhibit A, p. 148, lines 17-25).

[5] "For the period between January 1, 2013 to September 30, 2013 you have 95.30% in the closing of incidents and 87.50% in the closing of tasks which is why you are not meeting objectives." (d.e. 25, Exhibit L).

CIVIL 14-1814CCC                            5

> Due to the foregoing situations, and your allegation of not having knowledge or training to manage the servers, which represents a risk for the operation, you will be provided with training for four weeks from 9:00 a.m. to 6:00 p.m. which is why you must make the necessary arrangements to comply with the schedule to be able to participate in the training requested. The training will take place from October 21, 2013 to December 6, 2013. On that date we will evaluate if you have been able to complete the same in order to return to you regular work schedule. Otherwise, we will evaluate extending it for an additional period.

(d.e. 25, Exhibit L).

Carrillo testified during his deposition that he was coerced by Morales to issue the July 8, 2013 and October 7, 2013 warnings because Morales "was upset because [plaintiff] had requested reasonable accommodation" (d.e. 41-2, p. 131, lines 2-20; d.e. 41-3, p. 62, lines 3-15) and that performance data had been "manipulated." (d.e. 41-3, p. 9, lines 5-10). Plaintiff was terminated on December 20, 2013. (d.e. 25, ¶ 70).

## II.   LEGAL STANDARD: SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The Court does not weigh the facts but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248). "[A] party seeking summary

CIVIL 14-1814CCC						6

judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 fn. 22, 118 S.Ct. 1584, 140 L.Ed. 2d 759 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986)); Fed. R. Civ. P. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986).

The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

**III.	DISCUSSION**
    **A.	Retaliation**

To establish a *prima facie* retaliation claim under the ADA, "a plaintiff must show that: (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." *Kelley v. Corr.*

CIVIL 14-1814CCC                              7

*Med. Servs., Inc.*, 707 F.3d 108, 115 (1st Cir. 2013).[6] Once the plaintiff has made a *prima facie* showing of retaliation, the defendant "must articulate a legitimate, non-retaliatory reason for its employment decision." *Id*. If the defendant is able to meet this burden, "the burden shifts back to [the plaintiff] to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010).

Plaintiff claims he was retaliated against *after*: (1) requesting a reasonable accommodation on May 7, 2013; (2) complaining to his supervisor, Carrillo, about poor illumination in his work area[7]; and (3) complaining to Solimar Ortiz on May 30, 2013 about the different harassing and discriminatory actions taken against him by Morales. (d.e. 32, p. 3). "Complaining of discrimination and requesting accommodation are protected conduct under the ADA." *Fernandez-Ocasio v. WalMart Puerto Rico Inc.*, 94 F. Supp. 3d 160, 170 (D.P.R. 2015). Thus, plaintiff has established the first element of his *prima facie* case.

To establish an adverse employment action, plaintiff "must show that a reasonable employee would have found the challenged action materially adverse." Colón-*Fontánez v. Municipality of San Juan*, 660 F.3d 17, 36 (1st Cir. 2011) (internal quotations omitted). An adverse employment action can include "demotions, disadvantageous transfers or assignments, denial of

---

[6] We note that an "ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability claim." *Freadman v. Metropolitan Property & Cas. Ins. Co.*, 484 F.3d 91, 106 (1st Cir. 2007).

[7] Plaintiff does not provide exact dates for these complaints. However, because he was transferred in March of 2013, we will assume that his complaints took place around the time he was transferred.

CIVIL 14-1814CCC                                8

transfers, or refusals to hire." *Id*. at 37. Plaintiff references a number of incidents he argues constitute adverse employment action: (1) his transfer by Morales to the "NOC area"; (2) failure to provide him with any training with regards to the servers area; (3) disciplinary actions taken against him on July 8, 2013 and October 13, 2013; (4) conduct engaged by Morales, of showing up daily, at Ortiz-Pratts' desk, questioning that he was not doing his job and that he was worthless; (5) different discriminatory and retaliatory comments and threats made by Solimar Ortiz and Morales directly related to his requests for reasonable accommodation and his discrimination complaints; and (6) his termination on December 20, 2013. (d.e. 32, pp. 4-8).

Although plaintiff's allegations that he was transferred to the NOC, that he was not provided with any training, Morales' conduct towards him, and comments and threats directed at him, alone, would not be sufficient to establish an adverse employment action, the disciplinary actions taken against him on July 8, 2013 and October 13, 2013 and his termination on December 20, 2013 certainly do. Thus, plaintiff has satisfied the second prong of his *prima facie* case.

"In order to establish a causal connection, a plaintiff must show that the employer acted because she engaged in a protected activity." *Fernandez-Ocasio,* 94 F. Supp. 3d at 173. Plaintiff relies heavily on the testimony of Carrillo to prove the causality of the alleged adverse actions to the protected conduct. Carrillo testified that Morales ordered him to issue the July 8, 2013 and October 7, 2013 against plaintiff because of plaintiff's request for reasonable accommodation. Viewing the record in light most favorable to the plaintiff, a reasonable jury could find that the adverse actions were in response to plaintiff's protected conduct. Plaintiff has succeeded in making a *prima facie*

CIVIL 14-1814CCC	9

showing of retaliation, such that burden shifts to defendant to "articulate a legitimate, non-retaliatory reason for its employment decision." *Calero-Cerezo*, 355 F.3d at 26.

Evertec maintains that it had legitimate, non-discriminatory reasons for Ortiz-Pratts' termination, specifically "his failure to comply with the required metrics, that is, the percentage of incidents and tasks he was supposed to close; using Company property to access Facebook; leaving his laptop in his car thus resulting in the theft of the same; and having substandard performance in relation to his job duties and responsibilities." (d.e. 26, p. 19). Based on the record before the Court, defendant has satisfied its burden: It has articulated a clear reason for Ortiz-Pratts' termination. Thus, "the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Calero-Cerezo*, 355 F.3d at 26.

Plaintiff has established a genuine issue as to whether the proffered reason given by defendant for his termination is a pretext and whether his termination was the result of the defendant's retaliatory animus. First, in his affidavit, Carrillo states, that he was coerced by Morales to issue warnings to Ortiz-Pratts. (d.e. 41-2, p. 56, lines 6-7). In reference to the required metrics, Carrillo declares that the "data [for Ortiz-Pratts' performance metrics] was manipulated." (d.e. 41-3, p. 9, lines 5-10). Carrillo also asserts that Morales instructed him to take disciplinary actions against Ortiz-Pratts because Morales "was upset because [plaintiff] had requested reasonable accommodation." (d.e. 41-3, p. 62, lines 3-15). On the record before it, the Court cannot make

CIVIL 14-1814CCC                              10

a credibility determination as to whether or not a retaliatory animus existed[8]. Accordingly, summary judgment on the ADA retaliation claim is **DENIED**.

### B. Hostile Work Environment

To establish a hostile work environment under the ADA, a plaintiff "must show that his 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment.'" *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993)). "The Court must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" when making this decision. *Colon v. San Juan Marriott Resort & Stellaris Casino*, 600 F. Supp. 2d 295, 311 (D.P.R. 2008) (internal citations and quotations omitted).

Plaintiff argues that Morales, on a daily basis since approximately April of 2013 and up to the date of his termination, made discriminatory and derogatory comments based on his request for reasonable accommodation.

---

[8] Defendant notes in its Reply brief that Carrillo has filed suit against Evertec and that his testimony "is different from his statements in the e-mails he exchanges with Human Resources in December, 2013 regarding Plaintiff's potential dismissal." (D.e. 35, pg. 9, fn. 5). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" and thus fall outside of the scope of summary judgment. *Rodriguez Velazquez v. Autoridad Metropolitana de Autobuses*, 502 F. Supp. 2d 200, 204 (D.P.R. 2007)(internal citations and quotations omitted).

CIVIL 14-1814CCC                            11

During his deposition, plaintiff stated that the discriminatory comments made to him by Morales were the following: "If you don't like it, leave." "You're not good for this job." "There are a hundred people out there waiting for your job." "Keep crying all the way to the State Insurance Fund." "Go cry over to SINOT." "What's wrong? Are you nervous with the rest of the staff." "I'm going to clean up the Department's garbage." "If you don't like it, run to the State Insurance Fund again to cry to them."  (d.e. 28-1, p. 101, lines 6-12).  When asked whether there were other comments, Ortiz-Pratts replied: "From the ones I can recall at this time, those were the ones that affected me the most." (d.e. 28-1, p. 101, lines 13-15).  These comments do not rise to the level of a hostile working environment by First Circuit standards. *See Colón-Fontánez, 660 F.3d at 44* (holding that actions by supervisor towards plaintiff in refusing to meet with her, refusing to amicably greet her, following her when she left her desk, not allowing her to participate in a contracts workshop "certainly indicate an uncomfortable and tense working relationship between [plaintiff] and [supervisor] [but], . . . are not sufficiently severe or pervasive to constitute a hostile work environment); *Fernandez-Ocasio*, 94 F. Supp. 3d at 178 (finding that comments made by the plaintiff's immediate supervisor that she was "good for nothing" because she said she was in pain and should apply for social security "are insensitive and out of line, but no more serious or pervasive than what has been found insufficient to create a hostile environment in the First Circuit").

Additionally, plaintiff alleges that Morales who is not his direct supervisor, would come to his desk and question him on a daily basis.  Viewing the conduct in the light most favorable to plaintiff, the Court cannot say that the conduct alleged was physically threatening nor that it interfered with his work

CIVIL 14-1814CCC                            12

performance. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond statutory purview. Where a workplace objectively falls short of that high-water-mark, it cannot sustain a hostile work-environment claim." *Fernandez-Ocasio*, 94 F. Supp. 3d at 178 (internal citations omitted). Therefore, Evertec's request as to the dismissal of plaintiff's hostile work environment claim is **GRANTED**.

   **C.   Title VII**

Title VII of the Civil Rights Act of 1964 is one of two jurisdictional basis raised by plaintiff. However, the Complaint is devoid of allegations that defendant had a discriminatory animus towards him based on race, color, religion, sex, or national origin. In fact, all the claims are anchored on Ortiz Pratts' alleged disability. Accordingly, plaintiff's Title VII claims are **DISMISSED**.

   **D. State Law Claims**

The remainder of plaintiff's claims are grounded on Puerto Rico law. Having voluntarily dismissed his Law 44 claim, we turn to plaintiff's claims under Puerto Rico's Law 115 and Law 80.

   **1.   Law 115[9]**

Puerto Rico's Whistle–Blower Act prohibits employers from discharging, threatening or discriminating "against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer, verbally or in writing, any

---

[9]In its Motion for Summary Judgment, defendant merely argues "Ortiz' termination from employment was not discriminatory nor in retaliation for any protected conduct, and that Ortiz failed to set forth sufficient evidence to the contrary. The evidence will show that Plaintiff's Act No. 44 and Act No. 115 claims are meritless and will be dismissed with prejudice." (d.e. 26, p. 31).

CIVIL 14-1814CCC				13

testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law." 29 L.P.R.A. § 194a. In order to succeed on this claim, the plaintiff must establish, by direct or circumstantial evidence, "that he or she (1) 'participated in an activity protected by §§ 194 et seq.' and (2) was subsequently discharged or otherwise discriminated against." *Collazo*, 617 F.3d at 45.

It is clear from the record that Ortiz-Pratts did not engage in "protected activity" as defined under the law. In other words, he did not "offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum." We need not go further. "A plaintiff may not simply throw a statutory reference into a complaint hoping to later flesh out its claim with facts in support." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 88 (1st Cir. 2008). Defendants request to dismiss plaintiff's Law 115 claims is **GRANTED**.

### 2. Law 80

Under Puerto Rico's Law 80, an employee who has been wrongfully terminated is entitled to receive severance payments from his or her employer. 29 L.P.R.A. § 185a. "According to Law 80, a dismissal without just cause is '[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment.'" *Torres-Alman v. Verizon Wireless Puerto Rico, Inc.*, 522 F. Supp. 2d 367, 399-400 (D.P.R. 2007).

As per the retaliation analysis, defendant has provided just cause for terminating plaintiff; that is, his failure to comply with the duties and responsibilities of his position. However, plaintiff has provided sufficient evidence, mostly through the testimony of Carrillo, demonstrating that a

CIVIL 14-1814CCC               14

genuine issue of material fact remains as to Evertec's proffered reason for his dismissal.  Thus, summary judgment as to plaintiff's Law 80 claim must be **DENIED**.

## IV.    CONCLUSION

For the reasons stated above, Evertec's Motion for Summary Judgment (**d.e. 26**) is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is GRANTED as to plaintiff's (1) disability discrimination and failure to provide reasonable accommodation claims pursuant to ADA and Law 44, (2) hostile work environment claims under ADA, (3) claims under Title VII of the Civil Rights Act of 1964, and (4) Law 115 claims, all of which are **DISMISSED WITH PREJUDICE**.  Pending before the Court are plaintiff's remaining ADA retaliation and Law 80 claims.

Partial judgment to be entered in conformity with this Opinion and Order.
SO ORDERED.
At San Juan, Puerto Rico, on March 31, 2017.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge